Noy. The case is this: Gulielm Shelley conveyed lands to the use of himself for life, remainder to John Shelley and the heirs of his body, etc., provided that if the said Gulielm Shelley, at any time during his life, shall give, tender, pay, or offer to the covenantees, or the survivors of them, or the heir of the survivor, a ring, or pair of gloves of the value of 12d. or 12d. in money, the said Gulielm Shelley then expressing and declaring that the ring or gloves, etc., are tendered to the end of avoiding the uses, that then the uses shall cease and be void, and the covenantees and their heirs shall stand seized to the use of Gulielm Shelley, and his heirs forever. Afterwards the said Gulielm was attainted of high treason, etc. The attainder was confirmed by statute, 28 El., which enacted that he should forfeit all his lands, tenements, etc., *Page 701 
rights, conditions, and all other his hereditaments. Two years after the said Gulielm Shelley brought the conveyance into the Exchequer and had it enrolled. The Queen reciting the attainder of Gulielm Shelley, and the conveyance gave power to Sir John Foscue to deliver a ring, or a pair of gloves, etc., to the covenantees or their heirs in order to avoid the uses, and to certify the same into the Exchequer. Sir John Foscue, for and in the name of the Queen, declaring the contents of the letters patent, delivered a ring to Sir John Hungerford, son and heir to Sir Anthony Hungerford, one of the covenantees, declaring it to be given with an intention to avoid the uses in the indenture of covenants; and Sir John Hungerford accepted the ring. Sir John Foscue certified the matter into the Exchequer.
The question now is whether the condition is given to the Crown by the statute.
I contend it is not. Because it ought to be performed in person and not by attorney, for there ought to be a declaration of the intention with which the ring, etc., is tendered. Notwithstanding the attainder, Gulielm Shelley may perform the condition; but he cannot make an attorney to perform it in his name, as in the case of the Templars and their tenure in frankalmoign. As to the objection made, that, if such assurances in which none may perform the consideration except the party were permitted, there would be a great defect in the law; for in an attainder for treason, the King should not have the land, but it would go to the heir: *I answer that, according to law, no condition can be performed except by proviso, as on a feoffment or condition that if he tenders a sum of money, etc., afterwards the feoffor is attained, the King shall not have the condition by the common law: then there is no mischief in the common law, which was careful that such condition should not be forfeited. Here is a tender of something of value, and to make it Gulielm Shelley is to do a special act, viz., a declaration, etc. Littleton says that attornment is by express signification or implied means; yet a man shall not lawfully make attornment by attorney. In 32 H., 6, 22, one was admitted to attorn by attorney; but this was in the case of a rent charge, where no corporal service is due. But in a quid juris clamat, after plea pleaded, the defendant may make an attorney when the judgment is not to be that the defendant attorn, as if tenant for life claims a fee simple; but it is otherwise when there is to be judgment that the defendant attorn. For in aquod juris clamat et per quae servitia, the defendant shall do corporal service, viz., fealty and homage. Dyer, 136. So if the attornment which is only an assent cannot be done by attorney, ergo the tender here, etc., and to do a corporal act Scil. to declare, etc., Gulielm Shelley ought to do this in the time limited, etc. If the declaration had limited a special posture, as fitting or standing, he ought so to have *Page 702 
done it. So if I command one to make a deed of feoffment in Latin, according to such a copy, and he does it in the same words, but in French or English, he has not performed his authority. Gulielm Shelley may do such a corporal thing, notwithstanding the attainder, and then the Queen may have the benefit of the condition.
There are two parts in the condition, viz., a natural part; and this an attainted person may do; but he cannot have the consequence of the performance of the condition. I do not see how this case differs from that of the Duke of Norfolk. There the proviso was, if he makes a revocation in writing of his own hand, and it was resolved that the Queen should not have the condition. In this case there ought to be a declaration by Gulielm Shelley, as was adjudged in the Common Bench in a Montrans de droit, etc.
The second question is, whether the condition is well performed. The sum at the end of the sentence shows that 12d. shall be the smallest value of the ring. The third particular refers to the *two antecedents. Lessee for life, remainder for life, remainder to the lessor, at 20s. rent; it is a rent reserved to the lessee for life and remainder for life; but if he makes a lease for life, without impeachment of waste, remainder for life, this remainderman shall not have the privilege. Dyer, 347. There the time refers to both the things before recited. Here in the certificate, nothing is said about the price, and it is not certain in law, for it does not appear that the tender was well made. Another question is on the performance of the condition, whether there be such a certificate of record, whereby it may appear judicially that the condition is well performed. There ought to be a record of the performance, otherwise the Queen will have no title to the land. Englefield's case, 7 Rep. When the condition is a matter of fact, and the performance in pais, to entitle the Queen, there ought to be an inquisition of record, and it ought to be certified; whereupon the party may have a traverse. The fine in the present case was of record, but in it no condition appears; and the indenture, although it is recorded, yet is no record. There the performance of the condition being a matter of pais and the indenture a matter of fact, if there be no particular record whereby it may appear that the condition is performed, the Queen has no title. It is not certified that the tender was made to any of the parties to the covenant or the heirs of any of them, but to the son and heir of one of them. If the tender was made in this manner, it was not done according to the proviso. For the eldest son is son andheir apparent during the life of the father, and it is not certified that the father was dead. P. 35, Eliz. rot., 242, C. B. Audley brought debt against Newdigate, son and heir apparent to Newdigate, and he counted on an obligation by R. Newdigate, the father, and on rien per discent pleaded, there was judgment pro quaer. But on *Page 703 
a writ of error, the judgment was reversed, because by such an appellation it is intended that the father is alive.
Hitcham, pro defendente. As to the objection to the value of 12d., this was not the intention of the parties. But as to the main question for the attainder, the condition is given to the Queen by the statute 32 H., 8, by which all conditions are forfeited. Marquis of Winchester's case. And ipsodeclarante makes no difference.
As to the exception to the value of 12d., nothing appears, non refert. As to the matter of record. The Queen may seize lands without any record. If return be made into the Exchequer that a man is beyond the sea and will not return, being commanded so to do, the Crown may seize his lands. And although the son cannot be heir during the life of his father, *the father may have an action de filio et haerede.
Noy. The record ought to certify that the father is dead; otherwise the son is not in the covenant.
[On another day in T. T., the case was argued by Sir George Crooke, pro.Quaer., and Sir Thomas Crew, pro defendente. H., 1., Car. Noy pro Quaer., and Serj. Hitcham pro defendente. P. 2, Car. Davenport pro Quaer., andCrew, pro quaerante, and]
Now it was argued by the court, viz., WHITLOCK, J., and JONES, J., prodefendente, and DODERIDGE, J., and __________ pro quaerente.
As to the exception taken by Noy, that the ring may be of less value than 12d., and his case of the lessee for life, remainder for life, without impeachment of waste, it goes to both the estates. T., 3 Jac. rot., 1619.Brackenbury and Brack. One covenanted to make a conveyance in fee within two years, and that he should be bound in an obligation of £ 200rationable premonition inde habita; it refers to both the clauses. Dyer, 347, pl. 10; 5 E., 4, 127. There if there be to be given a horse and an ox of the value of 40s., it refers to both. But this objection was in a manner overruled by the court.